UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

**RASHIDAH ALI,**

    **Plaintiff,**

v.

**HILLSTONE RESTAURANT GROUP and/or HILLSTONE RESTAURANT GROUP d/b/a HOUSTON'S RESTAURANT and/or HOUSTON'S, its agents, servants, employees, NICK SEGAL, ABC CORP 1-5, and/or JOHN DOE 1-5 and/or JANE DOE 1-5,**

    **Defendants.**

Civ. No. 20-10547 (KM) (ESK)

**OPINION**

**KEVIN MCNULTY, U.S.D.J.:**

    Plaintiff Rashidah Ali had lunch with three friends at a Houston's restaurant owned by defendant Hillstone Restaurant Group. (Defendants are referred to herein as "Hillstone.") After eating a late lunch and spending more than three and a half hours at their table, Ali's group was asked to leave the restaurant to make room for waiting diners. Ali brought this case, claiming that the restaurant's request that she leave was motivated by her race, in violation of the New Jersey Law against Discrimination ("NJLAD"), N.J.S.A. § 10:5-1 *et seq.* Defendants now move jointly for summary judgment. (DE 27.)[1]

---

[1]     For ease of reference, certain key items from the record will be abbreviated as follows:

| | | |
|---|---|---|
| "DE_" | = | Docket Entry in this Case |
| "Def. Br." | = | Defendant's Brief in Support of Summary Judgment (DE 27-1) |
| "Opp." | = | Plaintiff's brief in opposition to Summary Judgment (DE 30) |

1

For the reasons set forth below, Hillstone's motion for summary judgment is **GRANTED.**

## I. Background

On March 4, 2020, Rashidah Ali and three friends had lunch at a Houston's restaurant in Hackensack, NJ, which is owned by defendant Hillstone. (DSOMF ¶ 1, 8, 12.) Defendant Nick Siegel is an employee of the Houston's restaurant.[2] (DSOMF ¶ 28.) Ali and two of her friends are African-American, and the fourth member of their party is white. (*Id.* ¶ 8.) The party was seated at their table at 2:22 P.M. (*Id.* ¶ 12.) The four ordered and ate lunch and at 4:01 P.M., approximately 90 minutes after they were seated, they paid the bill. (*Id.* ¶ 13.) The friends remained seated, however, and approximately an hour later, at 5:06 P.M., they ordered another round of drinks. (*Id.* ¶ 14–15.) A second check was brought shortly after this second round of drinks was served. (*Id.* ¶ 16.) The party then ordered a third round of drinks, which arrived along with another, updated check, at 5:22 P.M. (*Id.* ¶ 17.) That second check was paid at 5:35 P.M. but the party again remained at the table. (*Id.* ¶ 18, 20.)

At this time, the dinner hour had begun, and the restaurant was quite full, with at most three open tables. (*Id.* ¶ 21.) Around 6:00 P.M. the party attempted to order another round of drinks. (*Id.* ¶ 22.) Their server went to her manager, Molly Kornfield, and informed Kornfield that the table had been seated for several hours and wanted to again reopen their bill. (*Id.* ¶ 24.) Kornfield determined that the party had been there for over three and a half hours and informed them that they could not reopen their check yet again, but instead had to leave the restaurant. (*Id.* ¶ 25–26.) Although the restaurant's policy is to ask diners in this type of situation to relocate to the bar, no one

---

|  |  |  |  |
|---|---|---|---|
|  | "DSOMF" | = | Defendants' statement of material facts (DE 27-2) |
|  | "Video" | = | Video taken by plaintiff Ali, DE 27-9, Ex. F. |
| 2 | Siegel's name is misspelled in the caption. | | |

asked Ali and her friends to do so.[3] (*Id.* ¶ 29.) After Ali reacted negatively to the request that the group leave the restaurant, Kornfield requested assistance from Nick Siegel, another manager. (*Id.* ¶ 27–29.)

At this point, the interaction between Ali and the restaurant staff became contentious. Ali stated that she was being subjected to "an act of racism" and began to film the encounter with her cell phone. (*Id.* ¶ 30–31.) Siegel asked Ali's party to "start wrapping it up because we don't have enough tables to accommodate walk-ins and reservations." (*Id.* ¶ 32.) Ali and Siegel then went back and forth, Ali expressing her party's desire to have another round of drinks and Siegel insisting that they leave now because other guests were waiting. (*Id.* ¶ 33–35.)

As the party left the restaurant, Ali filmed a second video showing that three tables were empty. (*Id.* ¶ 40.) Defendants claim that two of the tables were not available because the restaurant was short-staffed, and that a party was seated at the third table a minute or two after Ali and her party left the restaurant. (*Id.* ¶ 42–45.)

In addition, Ali has submitted the affidavit of Aisha Wilson, who worked at Houston's for eighteen years until January 2018. (DE 31.) Wilson asserts that she never asked patrons to leave for remaining too long at their table, that she had been passed over for promotion because of her race, and that Houston's had made policy and menu changes, such as a dress code disallowing sports jerseys, that she believes were meant to dissuade African Americans from dining there. (DE 31 ¶ 4–7.)

Ali brought this case in New Jersey Superior Court, Bergen County – Law Division on July 16, 2020. (DE 1-1.) Defendants timely removed the action to this court on August 14, 2020. (DE 1.) The complaint contains four Counts. Count 1 is for race or national origin discrimination under the NJLAD (DE 1-1

---

[3]      Kornfield testified that she did ask Ali's party to relocate to the bar, but this is contested. For the purpose of this motion, I assume the truth of Ali's claim that she was not offered the option to relocate to the bar. (Def. Br. at 6 n.2.)

p. 1–4.) Counts 2 and 3 are for failure to remedy and failure to have an effective anti-discrimination policy, also under the NJLAD. (*Id.* p. 5–7.) Count 4 is for intentional and negligent infliction of emotional distress. (*Id.* p. 7–8.) Ali has agreed to dismiss Counts 2, 3, and 4, leaving only the NJLAD race discrimination Count.[4] (Opp. at 18–19.) Discovery proceeded and was completed on September 8, 2021 (DE 24) and defendants moved jointly for summary judgment on October 13, 2021 (DE 27). Ali filed a brief in opposition (DE 30) and submitted the Wilson affidavit (DE 31). Defendants filed a reply (DE 32.) This motion is now fully briefed and ripe for decision.

## II.   Standard of Review

Federal Rule of Civil Procedure 56(a) provides that summary judgment should be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); see also *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Kreschollek v. S. Stevedoring Co.*, 223 F.3d 202, 204 (3d Cir. 2000). In deciding a motion for summary judgment, a court must construe all facts and inferences in the light most favorable to the nonmoving party. See *Boyle v. County of Allegheny Pennsylvania*, 139 F.3d 386, 393 (3d Cir. 1998). The moving party bears the burden of establishing that no genuine issue of material fact remains. See *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). "[W]ith respect to an issue on which the nonmoving party bears the burden of proof ... the burden on the moving party may be discharged by

---

[4]   While seeming to acknowledge that infliction of emotional distress claim is subsumed by her NJLAD race discrimination claim, Ali also appears to argue separately the merits of a claim of infliction of emotional distress. (Opp. at 18–20.) The case law is clear, however, that "[w]hen a common law claim of intentional infliction of emotional distress is based on the same allegations supporting Plaintiff's LAD claim, Plaintiff is not entitled to relief because supplementary common law causes of action may not go to the jury when a statutory remedy under the LAD exists." *Valentine v. Bank of Am.*, No. CIV.A. 09-262 (SDW), 2010 WL 421087, at *6 (D.N.J. Feb. 1, 2010). I believe that Ali has agreed to dismiss Count 4, but if not, I would grant summary judgment in favor of defendants on that Count because it is preempted by the NJLAD.

4

'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Celotex*, 477 U.S. at 325.

Once the moving party has met that threshold burden, the non-moving party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574 (1986). The opposing party must present actual evidence that creates a genuine issue as to a material fact for trial. *Anderson*, 477 U.S. at 248; see also Fed. R. Civ. P. 56(c) (setting forth types of evidence on which nonmoving party must rely to support its assertion that genuine issues of material fact exist). "[U]nsupported allegations ... and pleadings are insufficient to repel summary judgment." *Schoch v. First Fid. Bancorporation*, 912 F.2d 654, 657 (3d Cir. 1990); *see also Gleason v. Norwest Mortg., Inc.*, 243 F.3d 130, 138 (3d Cir. 2001) ("A nonmoving party has created a genuine issue of material fact if it has provided sufficient evidence to allow a jury to find in its favor at trial."). If the nonmoving party has failed "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial, ... there can be 'no genuine issue of material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Katz v. Aetna Cas. & Sur. Co.*, 972 F.2d 53, 55 (3d Cir. 1992) (quoting *Celotex*, 477 U.S. at 322–23).

In deciding a motion for summary judgment, the court's role is not to evaluate the evidence and decide the truth of the matter, but to determine whether there is a genuine issue for trial. *Anderson*, 477 U.S. at 249. Credibility determinations are the province of the fact finder. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992). The summary judgment standard, however, does not operate in a vacuum. "[I]n ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 254 (1986). That "evidentiary burden" is discussed in detail below.

### III.   Discussion

With Ali's well-judged dismissal of Counts 2, 3, and 4, we are left with the heart of her claim: Count 1, the claim that defendants discriminated against Ali on the basis of her race in a place of public accommodation in violation of the NJLAD. Defendants seek summary judgment on this claim. Analyzing that claim within the *McDonnel Douglas* burden shifting framework, I conclude that summary judgment must be **GRANTED** in favor of defendants.

#### a. *McDonnell Douglas* **burden-shifting framework**

Ali argues that Hillstone discriminated against her on the basis of her race. As is common, she lacks substantial direct evidence of discriminatory intent (such as contemporaneous biased statements by Hillstone's employees), and therefore seeks to prove Hillstone's discriminatory intent through circumstantial evidence.[5]

When a plaintiff seeks to prove discrimination on behalf of the proprietor of a public accommodation under the NJLAD, courts evaluate motions for summary judgment under the specialized burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). *See Maultsby v. RIH Acquisitions NJ, LLC*, No. CIV.A. 09-4376, 2011 WL 6779556, at *8 (D.N.J. Dec. 27, 2011). The *McDonnell Douglas* test was formulated "to compensate for the fact that direct evidence of intentional discrimination is hard to come by." *Price Waterhouse v. Hopkins,* 490 U.S. 228, 271 (1989) (O'Connor, J., concurring).

---

[5]   A plaintiff may also seek to establish her case by the more difficult route of direct evidence. Where plaintiff proffers direct evidence, "the quality of evidence required to survive a motion for summary judgment is that which if believed, proves [the] existence of [a] fact in issue *without inference or presumption*." *Bergen Commercial Bank v. Sisler*, 723 A.2d 944, 954 (N.J. 1999) (internal quotations omitted); *see also Kirschling v. Atl. City Bd. of Educ.*, 10 F. Supp. 3d 587 (D.N.J. 2014) (drawing this distinction); *Pray v. New Jersey Transit*, 2014 WL 684592, at *10 (N.J. Super. Ct. App. Div. Feb. 24, 2014) (same).

The *McDonnell Douglas* analysis is divided into three phases, shuttling the burden between the plaintiff and the defendant.

*Step One: The Prima Facie Case.* At the outset, a plaintiff must state a *prima facie* case of discrimination. *Burton v. Teleflex Inc.*, 707 F.3d 417, 426 (3d Cir. 2013). A *prima facie* case of discrimination in a place of public accommodation has three essential elements: "(1) defendant operates a place of public accommodation; (2) the plaintiff is a member of a protected class; and (3) he or she was denied equal treatment on the basis of his or her membership in a protected class." *Vandeusen v. Mabel Realty of Bordentown*, LLC, No. 12-0330, 2012 WL 1664116, at *3 (D.N.J. May 11, 2012) (citing N.J. Stat. Ann. § 10:5–12(f); *Dasrath v. Continental Airlines, Inc.*, 2006 WL 372980 (D.N.J. Feb. 16, 2006)).

*Step Two: Legitimate Non-Discriminatory Reason.* If the plaintiff establishes a *prima facie* case, the burden of production shifts to the defendant, who must articulate a legitimate (*i.e.*, nondiscriminatory) basis for the actions to which plaintiff objects. *Burton*, 707 F.3d at 426; *Rodriguez v. Nat'l R.R. Passenger Corp.*, 532 F. App'x 152, 153 (3d Cir. 2013). "This burden is relatively light and is satisfied if the employer provides evidence, which, if true, would permit a conclusion that it took the … action for a non-discriminatory reason." *Burton*, 707 F.3d at 426 (internal quotations omitted).[6]

*Step Three: Pretext.* Once the defendant has offered a non-discriminatory reason, the burden of production shifts back to the plaintiff. Now the plaintiff must present evidence sufficient to show that the defendant's stated reason is merely a pretext for discrimination. *Id.*[7]

---

[6]   Indeed, at this stage, "the defendant need not prove that the articulated reason actually motivated its conduct." *Id.* (internal quotations omitted).

[7]   The plaintiff can do that in either of two ways: (1) she can discredit defendant's proffered reason; or (2) she can offer evidence that discrimination was more likely than not a motivating or determinative factor in the action. *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994). To meet that burden, the plaintiff may rely on direct or circumstantial evidence.

### b. Merits Analysis

Defendants argue that Ali has failed to provide sufficient evidence to support her *prima facie* case and, in the alternative, that she cannot demonstrate that defendants' legitimate non-discriminatory reason was pretextual. (Def. Br. at 13–18.) Ali, in contrast, argues that she has made a *prima facie* case and that fact issues preclude summary judgment on whether defendants' explanation was pretextual. (Opp. at 15–17.) On the first, closer question, I find that Ali has failed to make out a *prima facie* case. But even assuming that there is a *prima facie* case, she has failed to provide evidence demonstrating that defendants' non-discriminatory explanation was pretextual, and has failed to identify any disputed issues of material fact that could preclude summary judgment.

*Prima Facie Case.* I find that Ali has not presented a *prima facie* case that her party was asked to leave the restaurant because of her race. It is uncontested that the restaurant is a place of public accommodation, and that Ali is a member of a protected class. The remaining element is whether she was denied "equal treatment on the basis of … her membership in a protected class." *Vandeusen*, 2012 WL 1664116, at *3. It appears that Ali and her party were some of the only, if not the only, African-American diners in the restaurant and that they were asked to leave. Nowhere in the record, however, is there evidence that any employee of Hillstone expressed explicit bias against

---

Here plaintiff relies on the first method (discrediting the defendant's proffered reasons) and she thus faces a demanding standard: she must present evidence that allows a factfinder "reasonably to infer that *each* of the [proprietor's] proffered non-discriminatory reasons … was either a *post hoc* fabrication or otherwise did not actually motivate the employment action (that is, the proffered reason is a pretext)." *Id.* (internal quotations and citations omitted). The plaintiff "must show such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the [proprietor's] proffered legitimate reasons for its action that a reasonable factfinder could rationally find them unworthy of credence, and hence infer that the employer did not act for [the asserted] non-discriminatory reasons." *Iadimarco v. Runyon*, 190 F.3d 151, 166 (3d Cir. 1999) (internal quotations omitted).

8

Ali and her party. Ali therefore must attempt to make her case through circumstantial evidence.

Ali points to several pieces of evidence to establish her *prima facie* case. First, citing the video she took, Ali claims that it reveals 1) "numerous Caucasian patrons who were dining at the restaurant and not repeatedly brought their checks after each round of drinks without having asked for them or told they had to leave before they were done consuming what they had ordered" as well as 2) "empty tables where Defendant could have easily sat the guests purportedly waiting for Plaintiff's table."[8] (Opp. at 15.) In addition, Ali claims that the issue of whether the restaurant was enforcing its 90-minute dining time limit is an issue of fact for the jury, and that the Wilson affidavit demonstrates that Houston's had earlier put other policies in place to dissuade African-American patrons from dining there. (*Id.* at 16.)

None of these facts suffice to demonstrate that Ali was denied equal treatment on the basis of her race. First, Ali's cellphone video, which is approximately 90 seconds long, shows the other tables at the restaurant for only a few seconds each. It reveals nothing about how long white patrons sat, when white patrons were given their checks, or more generally how they were treated by defendants. Nor is there any testimony as to those issues. Vitally, to demonstrate that she and her party were denied equal treatment, Ali must show that *similarly situated* white patrons were treated differently. "Although 'similarly situated' does not mean identically situated, the comparator must be similar in all relevant respects." *Durst v. City of Philadelphia*, 798 F. App'x 710, 713 (3d Cir. 2020). Here, Ali has produced no evidence to demonstrate that the white diners were similarly situated with respect to the critical issue: the length of time they had spent in the restaurant. Ali has presented no evidence that

---

[8]   As discussed below, I find that the relevance of the empty table issue is relevant not to the *prima facie* case of discrimination but rather is relevant to Ali's attempt to demonstrate that defendants' race-neutral explanation was a pretext for discrimination. Even if there were no empty tables, for example, Ali could potential have made a *prima facie* case if she had convincing evidence of bias.

any of the other diners had been sitting for a length of time that approached the roughly three and a half hours her party had been sitting. Indeed, Ali herself testified that she did not know how long any of the other restaurant patrons sat at their tables during her visit. (DE 30-2 at 109:11–13.) It is uncontested that Houston's had a race-neutral, written policy that reserved the right to ask a party to leave if the restaurant was busy and the party had dined for more than ninety minutes. (DSOMF ¶ 5; DE 27-13, Ex. 1.) Without evidence that her party was treated differently from a non-African-American party that had also been dining for several hours, Ali cannot make out a *prima facie* case of discrimination.

      The information contained in the Wilson affidavit, though concerning, does not rescue Ali's *prima facie* case, for three key reasons. (DE 31.) First, Wilson has no direct knowledge of the events surrounding Ali's removal from the Houston's restaurant, and cannot rebut the evidence of any of the participants. Second, on March 4, 2020, more than two years had passed since Wilson had been employed at the Hackensack Houston's. (*Id.* ¶ 3.) Concededly, her knowledge was based on 18 years' experience as an employee, but any information about discriminatory attitudes or practices at Houston's was more than two years out of date. She states, for example, that there was no 90-minute policy in effect when she worked at the restaurant, and that she had never personally asked patrons to leave because they had sat for too long; it is uncontested, however, that there *was* such a policy on March 4, 2020.

      Third, Wilson's testimony, offered to document discriminatory intent in an overall sense, is somewhat general. Ms. Wilson does not state that Houston's had ever before removed African-American diners for discriminatory reasons. Rather, she states that an unidentified supervisor or supervisors had evinced discriminatory attitudes by criticizing her braided hair style and passing her over for promotion. In addition, she points to practices, such as a dress code prohibiting sports jerseys and the dropping of certain menu items, that she infers were racially motivated. The affidavit does not give names,

places, or dates, attributing discrimination over an 18-year period to "management," "my supervisor," or "employees." (DE 31 ¶ 4–7.) Critically, Wilson does not link up any of her assertions to the person(s) alleged to have discriminated against Ali on March 4, 2020—*i.e.*, the relevant decision makers in this case.[9] In short, the Wilson affidavit comes closer to the mark, but is still insufficient; general allegations of discrimination stretching back for years, not linked to the particular persons involved here, cannot carry Ali's burden to show she was denied equal treatment on the basis of her race on March 4, 2020.

For this reason, I must grant summary judgment in favor of defendants, as Ali has not presented evidence to meet her burden to present a *prima facie* case at trial. *See Katz*, 972 F.2d at 55.

*Non-discriminatory reason and pretext*. There is a second, independent reason to grant summary judgment for defendants, even assuming that Ali has

---

[9]  Presumably, defendant Siegel or possibly Kornfield. As noted, Wilson speaks of discrimination generally, and does not offer specific evidence of any comparable situation. Even in the employment discrimination context, however, where another employee is offered as a comparator, summary judgment will not be denied unless the situations are parallel and involve the same relevant decisionmaker:

> "Employees are not considered comparable where the discipline was imposed by different decision makers," so [co-employee] is not a suitable comparator. *Nguyen v. AK Steel Corp.*, 735 F. Supp. 2d 346, 376 (W.D. Pa. 2010) (citations omitted); *see also Parker v. Farley*, 625 F. App'x 77, 83 (3d Cir. 2015) (recognizing that it is "very difficult" for a plaintiff "to establish any inference of discrimination" where proposed comparators were disciplined by different supervisors).

*Tamburello v. City of Allentown*, No. 5:20-CV-06153-JMG, 2022 WL 377400, at *6 (E.D. Pa. Feb. 7, 2022) (footnote omitted).

*Davis v. Cleary*, No. CIV. 09-0925 AET, 2011 WL 4435697 (D.N.J. Sept. 22, 2011), cited in defendants' reply, is not on point, but is illustrative of the governing principles. There, a school administrator made a claim of racial discrimination in employment. Judge Thompson granted defendants' motion for summary judgment, noting, *inter alia,* that the lack of any other African-American administrators did not, without more, demonstrate discrimination, and that an insensitive joke by the school superintendent, which had occurred more than a year before and did not involve the relevant decisionmakers regarding employment, did not suffice, either. *Id.* at *4–*5.

made out a prima facie case. I here address the evidence of defendants' non-discriminatory reason for Ali's removal from the restaurant and Ali's attempt to demonstrate that this explanation was pretextual. I find there is not sufficient evidence to create a jury question as to whether defendants' explanation for her removal—that she and her party had been sitting for an excessive period of time and the restaurant wanted the table for other guests—was pretextual.

As noted above, plaintiff chooses here the method of discrediting the defendant's proffered nondiscriminatory reasons for the action it took. That method requires proof that those reasons were fabrications, or that they are so improbable that a fact finder could find them unworthy of credence. *See Iadimarco v. Runyon*, 190 F.3d 151, 166 (3d Cir. 1999); *Fuentes v. Perskie*, 32 F.3d 759, 764 (3d Cir. 1994) (quoted more fully at pp. 7–8 & n.6, *supra*).

Defendants claim that Ali and her party were asked to leave the restaurant where they had sat for more than three and a half hours, not on the basis of race, but because Hillstone wanted to free up tables for dinner patrons. (Def. Br. at 6.) At the time, Houston's had a written policy that reserved the right to ask diners to leave after ninety minutes if other patrons were waiting.[10] (DSOMF ¶ 5; DE 27-13, Ex. 1.) Defendants thus proffer that their actions had nothing to do with Ali's race, but only related to the length of time she had spent in the restaurant. This suffices to meet defendants' "relatively light" burden to state a race-neutral explanation. *See Burton*, 707 F.3d at 426. The real battleground here is whether the defendants' race-neutral explanation was pretextual.

Ali attempts to demonstrate that this explanation was pretextual by making two distinct arguments. First, she argues that by providing her party with separate bills after the meal and two rounds of drinks, defendants "tried to force Plaintiff to leave the restaurant on three separate occasions." (Opp. at

---

[10]    That policy no longer appears on Hillstone's website, but was published on the website as of March 4, 2020.

17.) Second, she argues that because there were three empty tables at which waiting guests could have been seated, the defendants must be lying when they state that the restaurant needed Ali's table for its arriving dinner patrons. (Opp. at 17–18.) Both of these arguments fail to persuade, for the following reasons.

Now it is undoubtedly true, on this record, that the Houston's staff presented the bill in the expectation that Ali and her party would pay it and leave, as would be typical. The staff, however, did nothing to press the issue for several hours, until the dinner hour arrived. Such indulgence does not bespeak a pretextual stratagem to force African-American patrons out of the restaurant. Furnishing a patron with a check, moreover, is consistent with the restaurant's 90-minute policy. No inference of racial discrimination naturally arises from a restaurant's providing the check when it appeared to the servers that Ali's party had long ago finished their meal.

It is true that the presence of three empty tables could under some circumstances support an inference that Ali's table was not truly needed for other guests. Here, however, the uncontradicted record evidence supports defendants' explanation. Ali testified she does not know how many reservations were made that night, and the record does not contradict the restaurant's position that it needed to seat a surge of patrons arriving for the dinner hour. (The last, refused attempt to order another round of drinks seems to have occurred at around 6:00 p.m.) (DE 30-2 at 155:8–14.) It is quite plausible that a restaurant would permit patrons who had finished a late lunch to linger through the afternoon, but not through the dinner hour. So this fact, even viewed in isolation, does little to demonstrate that the defendants' nondiscriminatory explanation was pretextual.

Moreover, defendants provide significant affirmative evidence in support of their position. First, the evidence is uncontradicted that mere minutes after Ali and her party left, a dinner party was indeed seated at one of the three tables. (DSOMF ¶ 51–52.) Second, uncontradicted evidence shows that the

13

other two tables were out of service that night, for reasons having nothing to do with plaintiff or the allegations in this case. Defendants explain that there were not enough servers for the restaurant's 39 tables; 12 servers were working that evening, and the restaurant generally limits servers to working three tables at a time. (*Id.* ¶ 42–49.) Indeed, Ali's own video supports defendants' statement that two of the three tables were not in use that evening. One table, the one at which a party was seated immediately after Ali's departure, was clearly set for a meal; on it were four place settings, a candle, salt and pepper shakers, and what appears to be a bottle of hot sauce. (Video at 1:22.) In contrast, the other two tables were not set for a meal. On one of them was a large decorative bowl, a pile of coffee table books, and what appear to be four bottles of wine or olive oil. (Video at 0:55.) On the other was a large tray containing an ice bucket, some type of large decorative jug, and a large pile of silverware (as opposed to a place setting) wrapped in cloth napkins. (Video at 1:01.)

In short, the defendants offer evidence, Ali's video evidence tends to confirm, and Ali after suitable discovery is in no position to contradict, that two of the empty tables were out of service. The third table, the only one actually available for diners, was immediately filled just minutes after Ali and her party left the restaurant, corroborating that the dinner crowd was arriving.[11] The presence of three empty tables therefore does not demonstrate that the defendants' explanation was pretextual, and Ali has not demonstrated that any material facts related to pretext are disputed. So even if Ali had made a *prima facie* case of discrimination, I would still grant summary judgment in favor of defendants because their non-discriminatory explanation for their actions has not been rebutted.

---

[11] The race of the persons thereafter seated for dinner is not stated.

### IV. Conclusion

On the facts as Ms. Ali relates them, one can easily understand her embarrassment and irritation. Table turnover is an important key to profitability, and a modern restaurant in a mall may be unable to offer the leisurely accommodation of a Left Bank café. That is regrettable, but the issue here is not whether the restaurant behaved graciously; it is whether drawing the line at three and one half hours was shown to be a pretext for racial discrimination. On this record, it was not.

Defendants' joint motion for summary judgment (DE 27) is therefore granted. An appropriate order follows.

Dated: June 14, 2022

/s/ Kevin McNulty

_____

Kevin McNulty
United States District Judge